UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| SHARON WOLD, | ) | CIV. 12-4079-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING IN PART AND |
| vs. | ) | DENYING IN PART DEFENDANT'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| TAHER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, Taher, Inc., moves the court for summary judgment on all of plaintiff, Sharon Wold's, claims. Wold resists the motion on all claims except her breach of contract claim. For the following reasons, the court grants in part and denies in part Taher's motion.

**BACKGROUND**

The facts, viewed in the light most favorable to Wold, the nonmoving party, are as follows:

Taher is a food service management company with roughly 2,600 employees nationwide. The company contracts with businesses, schools, correctional facilities, and nursing homes to provide food and vending services at client locations.

Wold began working for Taher in June 2005 as a part-time cashier at Hutchinson Technologies, Inc., in Sioux Falls, South Dakota. In April 2006,

Wold moved to a vending[1] position at the Hutchinson location. Taher paid Wold an hourly wage in both her cashier and vending positions.

In April 2007, Taher promoted Wold to the position of food service director at its Hutchinson location. The food service director at each Taher location is responsible for kitchen management, financial and accounting management, administrative tasks, food production, sanitation and safety, and management of personnel within that location, in addition to regular duties within the cafeteria. *See* Docket 22-12. The position is a salaried position. Tom Johnson, Taher's district manager, was Wold's direct superior.

In mid-2009, Hutchinson closed its business in Sioux Falls. Several Taher employees, including Wold, were transferred to Taher's operation at Premier Bankcard, also in Sioux Falls. Wold continued to work part time at Hutchinson in May and June of 2009 to wrap up Taher's operation there, in addition to working five hours per day at Premier Bankcard. After Taher's operation at Hutchinson was fully closed, Wold began working full time at the Premier Bankcard location.

Paul Grunewaldt was Taher's food service director at Premier Bankcard in 2009. Because Taher already had a food service director at Premier Bankcard, Taher created a new position for Wold called cashier/catering

---

[1] Wold indicates that the vending position encompassed dealing with fresh food, chips, drinks, and candy sold in vending machines. Docket 22-1 at 3.

coordinator. Although Wold was no longer a salaried employee, Taher set her hourly wage based on her previous salary, and continued Wold's dental insurance. On September 30, 2010, Taher reduced Wold's hourly rate by 10 percent.[2]

Also in September 2010, Grunewaldt's employment with Taher ended. At that time, Taher divided Grunewaldt's duties between Wold and Deb Hardin. Wold took over some of the management duties, including payroll and supervision of employees, while Hardin took over the duties of head chef. Both Wold and Johnson stated that Taher changed Wold back to a salaried employee when she was promoted, but the record is unclear on exactly when or if that transition happened. *Compare* Docket 22-1 at 10 (statement by Wold that she was eventually salaried as a food service director at Premier Bankcard) *and* Docket 22-5 at 11 (statement by Johnson that Wold was salaried while Hardin remained hourly) *with* Docket 22-11 (payroll change summary noting no change from hourly to salaried compensation while Wold was food service director at the Premier Bankcard location).

---

[2] The payroll change notice for Wold's wage reduction, Docket 22-17, does not list a reason for the change, but Johnson stated in his deposition the reduction was because "the position that [Wold] held was outside the pay scale of what that normal position is." Docket 22-5 at 20. Taher's payroll department did not receive the payroll change notice, however, so the decrease in pay did not take effect until after Wold returned to work in February of 2011, following her injury. *See* Docket 22-18.

On November 23, 2010, Wold was pushing a catering cart and injured her leg. Wold's injury required medical treatment, and she was hospitalized for nearly one month. While Wold could not work, Hardin took over Wold's responsibilities at Premier Bankcard. Wold obtained a letter from her doctor stating that she could return to work on January 27, 2011, but Johnson told her she could not return until her doctor filled out a workability report. Wold got the required form completed on February 4, 2011, and returned to work the following Monday, February 7, 2011.

When Wold returned to work, Hardin continued to manage Taher's operation at Premier Bankcard. Wold was placed in the position of cashier, under Hardin's supervision. The 10 percent reduction to Wold's hourly pay rate dated September 30, 2010, was implemented on February 8, 2011. On April 7, 2011, Wold filed a claim for workers' compensation with the South Dakota Department of Labor stemming from her leg injury.

Sometime in the fall of 2011, Premier Bankcard removed the change machine from its facility. Wold needed change during one of her shifts and attempted to get change at a Premier Bank branch facility located nearby. The bank refused to provide change because Wold was not a bank customer. After the incident at the bank, Wold saw Miles Beacom, Premier's president, outside of a boardroom while she was serving a catered event. Wold asked Beacom to stop by her station in the cafeteria when he got a chance because she had a quick question for him.

4

On or around November 9, 2011, Wold spoke to Beacom about getting change in Premier's branch bank. Hardin was nearby or present for the conversation. The conversation was friendly and Beacom said he would look into the issue. Subsequently, Taher's contact at Premier Bankcard, David McCoy, told Hardin that Wold behaved inappropriately by not following the proper channels in resolving an issue between Taher and its client, Premier Bankcard. McCoy also called Johnson to express the same concern. Hardin emailed McCoy's report to Johnson as well.

Johnson reported Wold's conversation with Beacom to Judy Cameron, his superior. Taher suspended Wold on November 10, 2011. Johnson advised Cameron to terminate Wold, and she did so on November 18, 2011. Following her termination at Taher, Wold filed this suit, alleging claims for failure to pay overtime in violation of the Fair Labor Standards Act, retaliation, wrongful discharge, and breach of contract.

## STANDARD OF REVIEW

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Muor v. U.S. Bank Nat'l Ass'n*, 716 F.3d 1072, 1076 (8th Cir. 2013). The moving party must present admissible evidence showing there is no dispute of material fact or that the nonmoving party has not presented admissible evidence to support an element of the case on which it bears the ultimate burden of proof. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment should not be granted if there is a dispute about a material fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## DISCUSSION

### I.   Overtime Pay

In Count I, Wold alleges that Taher failed to pay her overtime as required by the Fair Labor Standards Act, 29 U.S.C. § 207(a), for the periods from April to June of 2009, September to November of 2010, and March to November of 2011.

#### A.  April–June, 2009

Wold argues that she was misclassified as an exempt employee in April and May of 2009 when she was the food service director at Hutchinson, and that she worked in excess of forty hours per week as a nonexempt hourly

employee in May and June of 2009. Docket 24 at 7-11. Taher argues that Wold's claim is barred by the statute of limitations contained in the FLSA, that Wold cannot rely on contradictory supplemental interrogatory answers to create a genuine issue of material fact, and that Wold was properly classified as an exempt employee.

The FLSA states that a suit to enforce a cause of action under that act "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). In the context of the FLSA, the Supreme Court has stated that:

> In common usage the word "willful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional." . . . The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent. The standard of willfulness that was adopted in [*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985)]—that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—is surely a fair reading of the plain language of the [FLSA].

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (internal citation omitted). In determining whether civil monetary penalties are appropriate, "an employer's conduct shall be deemed to be in reckless disregard of the [FLSA] . . . if the employer should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry." 29 C.F.R. § 578.3(c)(3). The Eighth Circuit has held, though, that a

7

failure to consult legal counsel does not by itself demonstrate a willful violation. *See Hanger v. Lake Cnty.*, 390 F.3d 579, 584 (8th Cir. 2004). To extend the statute of limitations from two to three years, the employee bears the burden of proving willfulness. *See Brown v. Fred's, Inc.*, 494 F.3d 736, 743 (8th Cir. 2007) ("[I]f the employee shows a willful violation, then the statute of limitations is extended from two to three years . . . ."); *Lochiano v. Compassionate Care, LLC*, No. 10-01089-CV-W-DKG, 2012 WL 4059873, at *7 (W.D. Mo. Sept. 14, 2012) ("The plaintiff bears the burden of proving that a violation is willful.").

Because Wold filed her claim under the FLSA more than two years after the alleged violations, Docket 1 at 1, she can only recover for alleged violations in April to June of 2009 if she demonstrates that Taher willfully violated the FLSA. To demonstrate willfulness, an employee must do more than show that an employer had general knowledge of the FLSA and its requirements. *See Hanger v. Lake Cnty.*, 390 F.3d 579, 583 (8th Cir. 2004) (applying *McLaughlin's* willfulness standard in the context of the Family and Medical Leave Act). Similarly, a violation of the FLSA that could "result from negligence or a good-faith, incorrect assumption about a statute's applicability just as easily as it could result from recklessness" is not sufficient to show a willful violation of the FLSA. *See id.* at 584 (citing *McLaughlin*, 486 U.S. at 135).

Wold claims that, for part of the time period at issue, she was misclassified as exempt and is entitled to compensation for overtime worked while she was the food service director at Hutchinson. In support of that claim,

8

Wold introduced evidence regarding her various job duties and argues that because her duties were largely manual and routine, she was not a bona fide executive employee. But evidence of a potential FLSA violation does not demonstrate that Taher knew or showed reckless disregard for whether Wold's exempt classification violated the FLSA. *See id.* (holding that, where a county board of commissioners failed to take the "prudent" action of determining whether its conduct would violate the FMLA, such a failure was insufficient to show recklessness). Therefore, even if Wold could prove Taher misclassified her as she claims, Wold has not introduced any other evidence that would allow a rational trier of fact to find that Taher willfully violated the FLSA with respect to her classification. *Id.* ("[I]t may be the case that [the plaintiff] identified an FMLA violation. However, we find nothing to suggest recklessness on the part of the [defendant].").

Wold also claims that during her transition from Hutchinson to Premier Bankcard she was a nonexempt employee and worked more than forty hours per week, entitling her to compensation for those overtime hours. In support of this claim, Wold stated that during her transition, she was scheduled to work five hours per day, five days a week as an hourly employee at Premier Bankcard. In addition, Wold was scheduled to work two hours a day at Hutchinson to wrap up Taher's operations at that location, although Wold testified that her work there often took more than the allotted two hours per day. *See* Docket 22-1 at 8 (stating that Wold was scheduled to work two hours

9

per day at Hutchinson "even though it took longer to do that [than the time scheduled]"). She also stated that Pat Ernst, a manager at Hutchinson, directed her work and requested that Wold come in extra hours to finish her work. Finally, Wold stated that she did not record her hours worked at Hutchinson because she had never done so and she thought there was an agreement between Johnson and Ernst that Wold would work as many hours as necessary. Docket 22-16 at 2.[3]

Wold and Johnson both testified that Taher scheduled Wold to work from 6 a.m. to 8 a.m. at Hutchinson, and from 8 a.m. to 2 p.m. at Premier Bankcard. Wold testified that when she returned, at Ernst's request, to work at Hutchinson after 2 p.m., no other Taher employees were present. Additionally, Wold has not introduced any evidence that she told Johnson, or anyone else at Taher, that she was working extra hours at Hutchinson. Nor has Wold indicated that Johnson told her she was to work as many hours as Ernst requested, or that Johnson indicated there was some arrangement to compensate Wold for additional hours. Absent some showing of actual or constructive knowledge on the part of Taher that Wold was working in excess of

---

[3] The court need not resolve whether Wold's supplemental interrogatory answer conflicts with her earlier interrogatory answer and her deposition testimony because even if Wold's supplemental answer is considered, it is insufficient to create a genuine dispute of material fact on whether Taher willfully violated the FLSA. *See Lykken v. Brady*, 622 F.3d 925, 933 (8th Cir. 2010) (reaffirming that a party cannot offer contradictory testimony to artificially create a *genuine issue of material fact*).

forty hours per week, Wold cannot show that Taher knew or recklessly disregarded whether its conduct violated the FLSA.

Wold has not shown the existence of a genuine issue of material fact on whether Taher's alleged FLSA violations were willful. Accordingly, the two-year statute of limitations applies and bars her claims from April to June of 2009.

## B.  September–November, 2010

Wold claims she was misclassified as an exempt employee in September, October, and November of 2010 when she was the food service director at Premier Bankcard. Taher contends Wold was an exempt executive or administrative employee during that time.

### 1.  Executive Employee

The FLSA creates an exemption to its wage and hour requirements for "any employee employed in a bona fide executive, administrative, or professional capacity . . . ." 29 U.S.C. § 213(a)(1). An employee qualifies as an executive if that employee (1) is compensated on a salary basis at a rate of not less than $455 per week; (2) has a primary duty of management of the enterprise or a department or subdivision of the enterprise; (3) customarily and regularly directs the work of two or more other employees; and (4) has the authority to hire or fire other employees, or has input in hiring or firing that is given particular weight. 29 C.F.R. § 541.100(a).

When Wold was the food service director at Hutchinson, she was compensated at a rate of $1333.33 and later $1420 semimonthly. Docket 22-

11. That rate of compensation would satisfy the first part of the executive employee test under the regulations, but the record is unclear on whether Wold was in fact a salaried employee during her brief time as the food service director at Premier Bankcard. *See, e.g., id.* (classifying Wold as an hourly employee beginning on May 16, 2009, and reflecting no subsequent change to a salaried employee). Additionally, Taher reduced Wold's *hourly* rate on September 30, 2010, to take effect on October 16, 2010. Docket 22-17. Although both Wold and Johnson testified that Wold was supposed to be salaried, the lack of any records showing Wold was changed to a salaried employee, combined with the reduction in her hourly wage during the time she was supposed to be salaried, casts doubt on whether Wold was, in fact, a salaried employee while serving as the food service director at Premier Bankcard.

An employee's primary duty is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a).

> Generally, management includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the

budget; and monitoring or implementing legal compliance
measures.

29 C.F.R. § 541.102. Concurrent performance of exempt and nonexempt work

does not necessarily disqualify an employee from the executive exemption. 29

C.F.R. § 541.106. The Eighth Circuit has recognized that an employee in charge

of a store can have management as a primary duty, even if the majority of that

employee's time is spent on nonexempt work. *Murray v. Stuckey's Inc.*, 939 F.2d

614, 618 (8th Cir. 1991). The record demonstrates that Wold exercised

discretion in the supervision of employees, managed scheduling and hours, had

input in hiring and firing, and generally was responsible for the administration

of Taher's Premier Bankcard facility. But Wold also testified that the majority of

her time was spent on routine, repetitive, or nonexempt tasks. Additionally,

Wold shared some management duties with Hardin. The amount of time spent

on exempt versus nonexempt duties is a factual question. *See Jones v.

Dolgencorp, Inc.*, 789 F. Supp. 2d 1090, 1104 (N.D. Iowa 2011) (citing *Icicle

Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).

During Wold's time as food service director, she regularly directed the

work of four other employees. Docket 22-1 at 10. Wold also stated that she had

the authority to hire employees, although she did not do so during her time at

Premier Bankcard. *Id.* Although Taher has shown there are no genuine issues

of material fact with respect to the third and fourth elements of the test for an

executive employee, questions of fact remain as to whether Wold was salaried

13

and whether her primary duty was management. Therefore, issues of material fact exist on the executive employee exemption issue to the FLSA's overtime requirements, and Taher is not entitled to summary judgment.

### 2. Administrative Employee

Alternatively, Taher claims that Wold was an exempt administrative employee. An exempt administrative employee is an employee (1) who is compensated on a salary or fee basis at a rate not less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or business operations of the employer; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a).

As the court noted when discussing the executive employee exemption, Wold's salary status is unclear. Whether she was, in fact, ever a salaried employee is a factual question that must be answered before it can be determined if Wold was an exempt administrative employee. With respect to Wold's primary duty, federal regulations state:

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations[;] government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

14

29 C.F.R. § 541.201(b). To qualify for an administrative exemption, the administrative work must also include the exercise of discretion and independent judgment in light of all the facts involved. *See* 29 C.F.R. § 541.202(b). Wold performed some administrative tasks, such as accounting, budgeting, quality control, purchasing, safety and health regulation, and personnel management. But she also did a substantial amount of nonadministrative work, such as food preparation, stocking vending machines, and operating a cash register. Furthermore, some of the administrative work performed by Wold, such as daily cash reports, did not include the exercise of significant discretion. Hardin handled developing menus and other food-related aspects of Taher's operation. "Disputes regarding the nature of an employee's duties are questions of fact . . . ." *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1081 (8th Cir. 2000). Therefore, a genuine issue of material fact exists with respect to what percentage of time Wold spent on exempt administrative work, whether such work qualifies as her primary duty, and whether it included the exercise of discretion and independent judgment.

Genuine issues of material fact exist with respect to whether Wold was properly classified as an exempt employee, either in an executive or administrative capacity. Accordingly, summary judgment on Wold's FLSA claim alleging she was misclassified from September to November 2010 is denied.

15

### C.  March–November, 2011

The FLSA requires employers to pay nonexempt employees at least one and a half times their regular wage for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). "An employee must be compensated for duties 'before and after scheduled hours . . . if the employer knows or has reason to believe the employee is continuing to work and the duties are an integral and indispensable part of the employee's principal work activity.' " *Hertz v. Woodbury Cnty., Iowa*, 566 F.3d 775, 781 (8th Cir. 2009) (alteration in original) (quoting *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975)); 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift. . . . The reason is immaterial."). To recover on her overtime claim, Wold would have to prove that she worked more than forty hours in a week without compensation for her overtime, and that Taher knew or should have known that she was working overtime without compensation. *See Hertz*, 566 F.3d at 781.

Wold claims that she worked a total of 17 hours and 40 minutes of overtime in various weeks from March 7, 2011, to November 4, 2011, without compensation. *See* Docket 22-26. Wold also states that, although she was paid for the overtime hours she recorded during that time period, she and Hardin sometimes falsified her reported hours to avoid putting down extra hours. Docket 1 at 17.

16

Taher contends that it did not have actual or constructive knowledge of Wold's unpaid overtime, and that Wold was paid for all the overtime she did report. Docket 26 at 10-11. Additionally, Taher interprets the actions of Hardin and Wold as attempts to avoid going over daily hourly budgets for the Premier Bankcard location as a whole, rather than a total of forty hours in a given week for Wold individually. *Id.* at 11-12. Therefore, Taher takes the position that it was entitled to rely on the hourly reports submitted by Wold and has complied with its burden under the FLSA. *Id.* at 13.

Wold was paid for the overtime she submitted on her time sheets from March to November 2011. Docket 22-37. But she expressed concern that Taher would "nag" employees for exceeding scheduled hours. Docket 22-1 at 17. Wold claims she came in earlier than she was scheduled. *Id.* at 16. At one point, Johnson called Hardin and instructed her to tell Wold that Wold should not come in early or work more hours than she was scheduled. *Id.*; Docket 22-3 at 6. Despite Johnson's instructions, Wold testified that she would come in early, and that she and Hardin would figure out ways to record her hours to avoid scrutiny. Docket 22-1 at 17; Docket 25-1 at 16-18. Hardin stated that Wold did not record her hours daily, so she would help Wold record her hours for each pay period, although Hardin denied that they manipulated Wold's hours to avoid paying her overtime. Docket 22-3 at 6.

Taher cites several cases for the proposition that an employer does not violate the FLSA if an employee fails to accurately record his or her time

worked. *See* Docket 26 at 10-12 (citing *Reich v. Stewart*, 121 F.3d 400 (8th Cir. 1997); *Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378 (6th Cir. 2006); *Holzapfel v. Town of Newburgh*, 145 F.3d 516 (2d. Cir. 1998); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 475 F. Supp. 630 (D. Or. 1979)). But those cases conclude that an employer cannot be liable for an FLSA violation of which it does not have actual or constructive knowledge. Because Wold has evidence that Taher knew or should have known of Wold's overtime, the authority cited by Taher does not preclude Taher's liability. If Taher had actual or constructive knowledge of Wold's unrecorded overtime, it is obligated to compensate Wold for her time worked even though she did not record it. *See Reich*, 121 F.3d at 407.

Even if Hardin did not know that Wold was working more hours than she was scheduled, she knew that Wold was not recording her hours in accordance with Taher's policy. *See* Docket 22-19 at 7 (requiring employees to record hours daily). Hardin also knew, from Johnson's phone call, that Wold had been reporting to work outside of her scheduled hours on some occasions. During this time period, Hardin was Taher's on-site manager, and her duties included supervision of employees and the development and maintenance of work schedules. Docket 22-12 at 3 (outlining the duties of food service director). Between Hardin's knowledge of Wold's practice of recording her time at the end of each pay period rather than daily, Wold's testimony that Hardin knew Wold's records were sometimes deliberately inaccurate, and Wold's testimony

18

regarding corporate pressure to avoid overtime, Wold has introduced sufficient evidence to create a genuine issue of material fact as to whether Taher knew or should have known that Wold was working hours in addition to those she recorded on her time sheets.

Wold has pointed to specific evidence in the record that creates a question of fact on whether she actually worked more overtime than the time for which she was paid, and whether Taher either knew or should have known that Wold was working hours in excess of forty hours per week for which she was not compensated. Accordingly, Taher is not entitled to summary judgment on Wold's FLSA claim relating to overtime from March to November of 2011.

## II.    Wrongful Discharge

The parties do not dispute that Wold's claims for wrongful discharge and retaliation arise under South Dakota law. Therefore, South Dakota substantive law applies to Wold's claims for wrongful discharge and retaliation. *See Witzman v. Gross*, 148 F.3d 988, 990 (8th Cir. 1998) (holding that state substantive law controls on supplemental state-law claims).

In Count III of the complaint, Wold alleges she was wrongfully discharged for filing a workers' compensation claim, in violation of SDCL 62-1-16. South Dakota is an employment at-will state. SDCL 60-4-4; *Anderson v. First Century Fed. Credit Union*, 738 N.W.2d 40, 45 (S.D. 2007). South Dakota has recognized exceptions to the employment at-will doctrine where a termination is contrary to public policy. *See Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225, 227 (S.D. 1988)

(holding that an employee who was discharged in retaliation for refusing to commit an unlawful act could state a cause of action for wrongful discharge); *Niesent v. Homestake Min. Co.*, 505 N.W.2d 781, 784 (S.D. 1993) (extending the public policy exception to include retaliation for filing a workers' compensation claim); *Dahl v. Combined Ins. Co.*, 621 N.W.2d 163, 167 (S.D. 2001) (extending the public policy exception to cover whistleblowing). Following the South Dakota Supreme Court's decision in *Niesent*, the South Dakota Legislature adopted SDCL 62-1-16, which states that "[a]n employer is civilly liable for wrongful discharge if it terminates an employee in retaliation for filing a lawful workers' compensation claim. The burden of proof is on the employee to prove the dismissal was in retaliation for filing a workers' compensation claim."

South Dakota applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to actions for wrongful discharge. *Lord v. Hy-Vee Food Stores*, 720 N.W.2d 443, 449-50 (S.D. 2006). Under the *McDonnell Douglas* framework, a plaintiff alleging wrongful discharge must first establish a prima facie case of wrongful discharge. *Id.* If the plaintiff establishes a prima facie case, a burden of production shifts to the defendant to articulate a legitimate, nonretaliatory reason for the discharge. *Id.* at 450. If the defendant produces a legitimate, nonretaliatory reason for its actions, the burden shifts back to the plaintiff to introduce evidence that the proffered reason is pretext for retaliation. *Id.*

20

## A.  Prima Facie Case

To state a claim for wrongful discharge, Wold must show (1) she engaged in a protected activity; (2) she subsequently suffered an adverse employment action; and (3) there is a causal link between engaging in the protected activity and the adverse employment action.[4] *Leslie v. Hy-Vee Foods, Inc.*, 679 N.W.2d 785, 789 (S.D. 2004) (citing *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 569 (8th Cir. 2000)). The parties do not dispute that Wold engaged in a protected activity, namely, filing a workers' compensation claim. Similarly, the parties do not dispute that Wold suffered an adverse employment action when she was terminated. Therefore, the critical question in determining whether Wold has stated a prima facie case of wrongful discharge is whether Wold has shown a causal link between her workers' compensation claim and her termination.

A causal link is "a showing that an employer's 'retaliatory motive played a part in the adverse employment action[.]' " *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 896-97 (8th Cir. 2002) (quoting *Sumner v. United States Postal Service*, 899 F.2d 203, 208-09 (2d Cir. 1990)). Evidence establishing an inference of a retaliatory motive is sufficient to establish a causal link. *Id.* at 897. "[C]ourts have not required a claimant to prove that the protected activity

---

[4] Although *Leslie* applies this three-step test to an activity protected under Title VII, both parties here urge the court to apply this test to an activity protected under South Dakota law. *See* Docket 19 at 17; Docket 24 at 17.

was the sole cause of the adverse employment action. Instead, they require a plaintiff to show that the . . . complaint was 'merely a contributing factor' in the decision to terminate . . . employment." *Lord*, 720 N.W.2d at 450 (citing *Wiehoff v. GTE Directories Corp.*, 61 F.3d 588, 598 (8th Cir. 1995)).

Wold contends that following her injury, and up through her termination, she was engaged in a process of seeking compensation for her work-related injury. Docket 24 at 17. To support her claim of a causal link between her workers' compensation claim and her termination, Wold asserts that (1) Johnson had at least constructive, if not actual, knowledge of her workers' compensation claim because Johnson filled out an injury report following Wold's injury in November of 2010; and (2) the fact that Wold was suspended while she was on her way to her deposition for her workers' compensation claim implies a causal link between her deposition and her termination.

In circumstances where an employee relies on the timing of an adverse employment action to show causation, the Eighth Circuit has stated:

> Generally, "more than a temporal connection is required to present a genuine factual issue on retaliation," . . . and only in cases where the temporal proximity is very close can the plaintiff rest on it exclusively. . . . As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation. . . . The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months.

*Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 986 (8th Cir. 2011) (internal citations omitted); *see also Muor*, 716 F.3d at 1079 (rejecting an inference of a retaliatory motive when the bulk of the alleged adverse actions occurred roughly eight months after the employee's protected activity). Wold filed her workers' compensation claim with the South Dakota Department of Labor on April 7, 2011, and was terminated on November 18, 2011. Even if Johnson had constructive knowledge of Wold's workers' compensation claim in November of 2011, Wold has not introduced any other evidence supporting a causal link or retaliatory motive. Because more than seven months elapsed between the time Wold filed her workers' compensation claim and her termination, there is no inference of a causal link between the filing of Wold's claim and her termination.

Wold's suspension occurred on the day of her deposition related to her workers' compensation claim, and her termination occurred shortly thereafter. Docket 22-1 at 23; Docket 24 at 19-20. Wold asserts that this temporal proximity between an integral part of her protected activity (pursuing her workers' compensation claim) and her suspension and termination creates an inference of causation. Wold also introduced an email from Johnson to Cameron regarding Wold's conversation with Beacom in which Johnson writes: "It's time to suspend Sharon and let go! She crossed the line. When it rains it pours!" Docket 22-28. Johnson's final sentence in his email to Cameron, though cryptic, is not sufficient to show actual or constructive knowledge of

23

Wold's deposition. *See Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 716 (8th Cir. 2000) ("A plaintiff must show the employer had actual or constructive knowledge of the protected activity in order to establish a prima facie case of retaliation."). Because Wold has not introduced any evidence that anyone at Taher knew of her workers' compensation deposition, she cannot establish that the timing of her suspension is anything more that a "mere coincidence of timing[.]" *Kipp*, 280 F.3d at 897. Thus, Wold has not stated a prima facie case.

### B.  Taher's Justification as Pretext

If Wold had made her prima facie case, then the burden shifts to the employer to produce a "legitimate, non-discriminatory reason for the adverse action." *Leslie*, 679 N.W.2d at 789. "If the employer meets this burden, the complainant must prove the proffered reason is a pretext for retaliation." *Id.*

Taher has consistently maintained that Wold's termination was due to her failure to follow proper channels in communicating with a client. McCoy, Johnson, and Cameron all testified that Taher did not permit employees to discuss business-related issues with client employees. Instead, Taher employees were supposed to deal with McCoy for all client-related issues because he was their client contact. *See, e.g.*, Docket 22-6 at 3 ("But [Taher employees] don't file complaints with [Premier Bankcard employees] or ask questions of that nature. If they want to talk weather, family, sports, that's fine.").

Courts have identified several methods of proving that an employer's proffered justification is pretext:

> An employee may prove pretext by demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before [s]he was terminated, that similarly situated employees who did not engage in the protected activity were treated more leniently, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies.

*Phillips v. Mathews*, 547 F.3d 905, 913 (8th Cir. 2008) (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006)). Wold has not introduced any evidence showing a positive performance review prior to termination, nor has she shown that similarly situated employees were treated differently. Wold does argue that Taher has changed its explanation for terminating her because Taher initially relied on its complaint resolution procedure, which is inapplicable, or alternatively, that Taher failed to follow its complaint resolution procedure. Wold also argues that Taher's justification is pretext because the conversation between Wold and Beacom was friendly and did not suggest any type of confrontation between the two, undermining the justification's factual basis.

Taher's complaint resolution procedure is a process to deal with conflicts between Taher employees. Docket 22-27. Taher has consistently argued that Wold violated its chain of command for client interaction, not its internal conflict resolution procedure. Docket 22-2 at 6-7; Docket 22-5 at 19.

25

Furthermore, the incident for which Wold was terminated was brought to Taher's attention by McCoy's complaints to Hardin and Johnson. McCoy does not work for Taher. The fact that disciplinary proceedings were instigated based on a report from someone outside Taher weakens any retaliatory inference. Finally, Wold's relationship with Beacom and the friendly tenor of the conversation between the two fails to show pretext because Wold does not dispute that the conversation took place, which is the factual basis for the proffered justification. Wold has not shown that Taher's stated reason for her termination was pretext.

Wold has not demonstrated a causal link between her termination and her protected activity. Even if Wold could show a causal link, Wold has not shown that Taher's articulated reason for her termination is false, nor has she offered evidence sufficient for a reasonable trier of fact to infer that retaliation was the real reason for her termination. Accordingly, summary judgment is granted in favor of Taher on Wold's wrongful discharge claim.

## III.    Retaliation

In Count II of the complaint, Wold claims Taher retaliated against her for pursuing her workers' compensation claim and requests relief under the public policy exception to the employment at-will doctrine applied to workers' compensation claims in *Niesent*. Wold pursues this claim in addition to her claim under SDCL 62-1-16 because Wold contends Taher retaliated against her

by delaying her return to work after her injury, by demoting her, and by reducing her pay once she returned.

In *Niesent*, the South Dakota Supreme Court stated that "[t]he lawmakers of this state clearly intend that workers injured in the course of employment be compensated without interference." *Niesent*, 505 N.W.2d at 784. Following *Niesent*, the South Dakota legislature enacted SDCL 62-1-16, which on its face is limited to instances in which an employee is terminated in retaliation for filing a workers' compensation claim. Wold argues that, based on the broad language in *Niesent*,[5] employees who suffer adverse employment actions short of termination should still have a cause of action against an employer as a matter of public policy.

Assuming without deciding that the South Dakota Supreme Court would allow employees to pursue retaliation claims for adverse employment actions short of termination, Wold would still have to establish a prima facie case for retaliation, including a causal link between her workers' compensation claim and the adverse employment actions, and she would also have to show that any proffered nonretaliatory justifications are a pretext for retaliation. *See Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225, 227-28 (S.D. 1988) (establishing that actions

_____

[5] In the past, this court has interpreted the public policy exception set forth in *Niesent* to extend to employees terminated in retaliation for activity protected by the FMLA and the Americans with Disabilities Act. *See Jones v. Bracco Ltd. P'ship*, Civ. No. 11-4117-KES, 2013 WL 696381 (D.S.D. Feb. 26, 2013).

for wrongful discharge based on public policy should utilize a burden-shifting framework).

Wold filed her workers' compensation claim on April 7, 2011. Docket 22-30. Her wage reduction was signed on September 30, 2010, before her underlying injury had happened. Both her demotion and Johnson's insistence that she fill out a workability report before returning occurred before her workers' compensation claim was filed. Because her demotion, pay cut, and alleged delay in returning to work all happened before Wold filed her workers' compensation claim, Wold cannot establish a causal link between those adverse employment actions and her future protected activity.

Additionally, Taher provided legitimate, nonretaliatory reasons for each adverse employment action. With respect to her pay cut, Johnson testified that her hourly wage was out of line with her duties, and that her wage had initially been set to reflect her previous salary as food service director at Hutchinson. With respect to her demotion, Johnson and Cameron both testified that Hardin performed well in Wold's absence and they made the business decision to keep Hardin in charge when Wold returned rather than revert to the split management arrangement. Finally, with respect to the delay in allowing Wold to return to work, Taher introduced evidence showing that Johnson's initial refusal to allow Wold to return to work was due to the fact that Wold had not provided Taher with the company's required workability report, and that once Wold provided that form, she was allowed to return to work immediately. Wold

28

has introduced no evidence to indicate that Taher's justifications are pretext for retaliation.

Therefore, even if the court were to decide that the South Dakota Supreme Court would expand on the public policy found in SDCL 62-1-16 and allow employees to pursue workers' compensation retaliation claims based on adverse employment actions other than termination, Wold has not shown either a causal link or that Taher's proffered reasons are pretext for retaliation. Taher is entitled to summary judgment on Wold's workers' compensation retaliation claim.

## IV.    Breach of Contract

In Count IV of the complaint, Wold seeks damages for breach of contract arising from Taher's alleged refusal to allow Wold to use vacation days. Wold concedes that Taher's employee handbook does not constitute a contract and states that as a result she is no longer pursuing her breach of contract claim. Docket 24 at 1. Accordingly, Taher is entitled to summary judgment on Count IV.

### CONCLUSION

Wold has not introduced sufficient evidence to support a finding that Taher willfully violated the FLSA, an element on which she has the burden of proof. Wold has, however, shown that genuine issues of material fact exist with respect to her alleged misclassification under the FLSA and her alleged unpaid overtime. Under the *McDonnell Douglas* framework applicable to Wold's

retaliation and wrongful discharge claims, Wold has not demonstrated a genuine issue for trial with respect to establishing a causal link or proving pretext. Accordingly, it is

ORDERED that Taher's motion for summary judgment (Docket 18) is granted with respect to Wold's Fair Labor Standards Act claim arising from April to June 2009, in Count I, Wold's retaliation claim in Count II, Wold's wrongful discharge claim under SDCL 62-1-16 in Count III, and Wold's breach of contract claim in Count IV.

IT IS FURTHER ORDERED that Taher's motion for summary judgment is denied with respect to Wold's Fair Labor Standards Act claims arising from September to November 2010, and from March to November 2011, in Count I.

Dated March 3, 2014.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE